18407

Vinnie D. MORROW, As Administrator of the Estate of Donald James Morrow, Appellant, v. The AMERICAN MUTUAL FIRE IN-SURANCE COMPANY OF CHARLESTON, South Carolina, Respondent.

(144 S. E. (2d) 489)

*Messrs. McKay, McKay, Black & Walker,* and *Donald V. Richardson, III,* of *Whaley & McCutchen,* of Columbia, *for Appellant,*

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Respondent,*

October 8, 1965.

BRAILSFORD, Justice.

This action is on the uninsured motorist provision of an automobile liability insurance policy issued to Vinnie D. Morrow by The American Mutual Fire Insurance Company of Charleston, South Carolina. Donald James Morrow, the fourteen year old son of the insured, was killed on November 10, 1961, when a miniature automobile, or Go-Kart, which he was driving on a track near the City of Columbia, known as the "Little Five Hundred Speedway," went out of control and collided with an ice cream truck located near the track. The truck was not registered or licensed as a mobile unit at the time, and was being used, at this location only, as a premises for dispensing ice cream.

Mr. Morrow was appointed as administrator of his son's estate and brought a wrongful death action against H. M.

Brantley, the operator of the raceway, and Morris S. Irby, the owner of the ice cream truck. The complaint charged Brantley with negligence and willfulness in the operation of the raceway in a number of particulars including the furnishing of defective machines to minors without adequate warning or instructions. Only two of the ten specifications against Brantley mentioned the ice cream truck, and these did not charge him as its owner or operator. Instead, it was alleged that Brantley was negligent in allowing the intestate to operate the Go-Kart "at a time when the defendant, Morris S. Irby's truck was parked approximately three feet from said track (etc.)"; and "in permitting the defendant, Morris S. Irby's truck to be parked three feet from the said track at a point where there was no safety device or guard rail to prevent the plaintiff's intestate from crashing into the said truck." The complaint charged Irby, alone, with negligence, and willfulness in parking the truck near the race track on which Go-Karts were operated and where there were no guard rails, etc.

Copies of the Summons and Complaint were served upon the insurance carrier, and the company was notified that neither Brantley nor Irby had insurance covering the accident. The company took no action in response to the service or notice. Irby filed an answer to the complaint, and Brantley defaulted.

Upon the trial of the case, the court directed a verdict in favor of the defendant Irby, and the jury awarded $25,-000.00 actual damages and $10,000.00 punitive damages against the defendant Brantley.

Thereupon, Morrow, as administrator of his son's estate, commenced this action against the insurance company, invoking the uninsured motorist provision of his policy and claiming the right to recover on the judgment against Brantley up to the policy limit of $10,000.00. The trial of the case resulted in an order of nonsuit and the administrator has appealed.

The complaint, in the first four paragraphs thereof, sets forth the appointment of plaintiff as administrator, the issuance of the policy with the uninsured motorist endorsement and the status of the intestate as an insured within the policy definition, etc. The last paragraph alleges the recovery of judgment against Brantley and the refusal of the insurance company, upon demand, to pay the judgment up to the policy limit of $10,000.00. Otherwise, the gravamen of the complaint is in paragraph 5, which contains the only reference to the circumstances of the fatal accident and of the judgment debtor's connection with it.

"5. Suit on behalf of the plaintiff's decedent was instituted against H. M. Brantley and Morris S. Irby in the Court of Common Pleas for Richland County for damages arising from the death of the plaintiff's decedent when he collided with an *uninsured ice cream truck* owned by Morris S. Irby but under the control of H. M. Brantley. On September 25, 1962, the defendant was notified by the plaintiff that neither of the defendants named in the suit had insurance on the *vehicle* involved and copies of the pleadings were delivered to the defendants' agent, Mr. Harvey D. Atwater." (Emphasis ours.)

The answer of the insurance company alleged that the truck in question was not being operated, maintained or used as a motor vehicle, but was "permanently parked" near the track; that Brantley did not own and was not operating an uninsured motor vehicle, within the meaning of the statute, and that the judgment in the prior action did not involve a finding that Brantley was guilty of any actionable negligence with respect to the location of the truck.

Legislation requiring uninsured motorist coverage was first adopted in this State in 1959 and was amended in 1960 and in 1963. The provision which was of force when the policy involved here was issued is codified as Section 46-750.14, Code of 1962. The 1963 revision, inapplicable here, appears as Section 46-750.33, 1964 Cumulative Supplement. For a more detailed statement of the purpose and history

of the Legislation, see *Laird v. Nationwide Insurance Co.,* 243 S. C. 388, 134 S. E. (2d) 206.

The controlling statute required that the insurance contract contain a provision, "undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle," within prescribed limits.

It is undisputed that the intestate was an insured within the meaning of the policy and statute. The sole question is whether the evidence offered at the trial was sufficient to establish that the judgment sued upon is a sum which plaintiff is legally entitled to recover from Brantley as the owner or operator of an uninsured motor vehicle.

According to the agreed statement, the plaintiff rested his case upon proof of (1) the judgment against Brantley for the wrongful death of the intestate; (2) the contract of insurance issued by the defendant with uninsured motorist protection covering the intestate; (3) the absence of liability insurance covering the ice cream truck or the Go-Kart.

The court ruled that, under the allegations and evidence in the former action, the judgment against Brantley did not involve an adjudication that Brantley was guilty of actionable negligence with respect to the ice cream truck, the only vehicle referred to in plaintiff's complaint against the insurance company. Hence, there was a failure to prove that plaintiff was entitled to recover under the terms of the statute and a nonsuit was granted.

Counsel for plaintiff undertook to avoid this result by contending that the Go-Kart was an uninsured motor vehicle within the meaning of the statute. When it was pointed out that the complaint contained no such allegation, counsel moved "to amend the complaint to conform to the proof." The court expressed the view that the Go-Kart, which was being operated as an amusement device on a private track, was not an uninsured motor vehicle within the meaning of the statute, and, expressly denied the motion to amend.

Plaintiff took no exception to the refusal of his motion. The issue on appeal, *i. e.*, the sufficiency of the proof to sustain recovery on the uninsured motorist requirement of the statute, must, therefore, be decided in the light of the allegations of the complaint, which makes no reference to a Go-Kart, or to any vehicle save the ice cream truck, with which the intestate is alleged to have collided.

We agree with the circuit court that, under the circumstances of this case, mere proof of the judgment against Brantley was not equivalent to proof that plaintiff is entitled to recover from him as the owner or operator of the uninsured ice cream truck, and, hence, from the defendant insurance company under the terms of the statute.

As we view the complaint in the original action, all of the specifications of negligence and recklessness against Brantley related to his operation of the Go-Kart raceway. The allegations that he was negligent and reckless in *permitting* Irby's unguarded truck to be parked in close proximity to the track, and in permitting the intestate to operate a Go-Kart on the track while the truck was so parked, fall short of charging that Brantley was the owner or operator of the uninsured vehicle.

We do not intend to suggest that different allegations or exceptions might have produced a different result. On the contrary, our satisfaction with the conclusion reached is fortified by our conviction that this tragic accident simply did not fall within the purpose or meaning of this compulsory insurance coverage, which "should not * * * be extended beyond the plain intent of the statute. *Laird v. Nationwide Insurance Co.*, 243 S. C. 388, 134 S. E. (2d) 206." *Davidson v. Eastern Fire & Casualty Insurance Co.*, 245 S. C. 472, 141 S. E. (2d) 135, 137.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.