Dianne THOMPSON, Appellant,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellee.

No. 9087.

Court of Civil Appeals of Texas, Amarillo.

March 26, 1980.

John C. Thompson, Dallas, for appellant.

Crenshaw, Dupree & Milam, Layton Z. Woodul, Lubbock, for appellee.

REYNOLDS, Chief Justice.

An automobile owner, occupying her automobile as a passenger when it collided with an uninsured motorist's vehicle, failed to persuade the jury that she was entitled to the uninsured motorist coverage afforded in an automobile liability policy issued to the father of the operator of her automobile. Because she failed in her appellate burden to establish as a matter of law that she was insured under the policy, we affirm.

Dianne Thompson was a passenger in her own vehicle, which was being permissively operated by Chris A. Johansen when it was involved in a collision with a vehicle operated by Gabriel Sanchez Espinosa in Garza County, Texas. Alleging that Espinosa was an uninsured motorist whose negligence was a proximate cause of her personal injuries and property damages, Thompson brought an action against Lumbermens Mutual Casualty Company (Lumbermens) and United Services Automobile Association (USAA). She sought to hold the insurance companies liable for her monetary damages by virtue of the uninsured motorist endorsement to a policy of automobile liability insurance issued by each company.

Lumbermens had issued its family automobile policy to Dianne Thompson, listing her Buick automobile, the one involved in the collision, and providing uninsured motorist protection coverage only for personal injury.[1] USAA had issued its family automobile policy Number USAA 017 85 00 704 15, naming Eivind H. Johansen as the insured, and describing his three automobiles garaged in Annandale, Virginia, none of which was involved in the collision. The policy designated Chris A. Johansen, the son and a resident of the household of Eivind H. Johansen, as one of the operators.

Part IV of USAA's policy afforded bodily injury protection against uninsured motorists. In this part, one of the definitions of an "insured" is "(a) the named insured and any relative," and one of the definitions of an "insured automobile" is "(d) a non-owned automobile while being operated by the named insured."

The policy also contained an endorsement providing uninsured motorist coverage, specifying that USAA

---

1. The statement of Lumbermens' coverage is taken from Thompson's brief absent the inclusion of Lumbermens' policy in the appellate record and a challenge to the statement by USAA.

will pay in accordance with Section 38.1–381 of the Code of Virginia . . . all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle.

Paragraph II of the endorsement designated an insured under this insurance as

(a) the named insured and, while residents of the same household, the spouse and relatives of either;

(b) any other person while occupying an insured motor vehicle; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

Under the definitions in Paragraph V of the endorsement, an "insured motor vehicle" means a motor vehicle

(a) registered in Virginia with respect to which the bodily injury and property damage liability coverage of the policy applies;

(b) while temporarily used as a substitute for an insured motor vehicle as described in subparagraph (a) above, when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(c) while being operated by a named insured or by his spouse if a resident of the same household;

subject, however, to some exclusions not material to this appeal.

Trial was to a jury. The jury found that Espinosa was an uninsured motorist as defined in both policies of insurance, and that he was guilty of four acts of negligence proximately causing the collision. No issue of negligence on the part of Thompson or Johansen was submitted to the jury.

The jury also found that Thompson was entitled to the protection and the benefits of the uninsured motorist provisions of Lumbermens' policy; but, by its "no" answer to special issue no. 4, the jury failed to find that she was entitled to the protection and benefits of the uninsured motorist provisions of USAA's policy. The jury fixed $7,500 as compensation for Thompson's injuries, $1,849.26 as compensation for her medical care, and $2,350 as the damage to her vehicle.

Denying Thompson's motion to disregard the jury's answer to special issue no. 4 and to render judgment against USAA for her $2,350 property damage, the court rendered judgment on the verdict. The court decreed that Thompson recover from Lumbermens the sum of $9,349.26 with post-judgment interest, and that costs be taxed against Lumbermens.[2] The court further decreed that Thompson take nothing from USAA and ordered that her suit against USAA be severed.

Appealing from the severed take-nothing decree sans a statement of facts, Thompson undertakes to establish as a matter of law that USAA is liable, by virtue of the uninsured motorist coverage in its policy issued to Eivind H. Johansen, for the damages she is entitled to recover from Espinosa. In this endeavor, she alleges that special issue no. 4 submitted a question of law, rather than a question of fact, for the jury's determination and, hence, the jury's answer thereto cannot form any basis for the rendition of the take-nothing judgment. USAA disputes the lack of, and affirmatively asserts there were, fact issues underlying the submission of the issue, insisting that in the absence of a statement of facts, the judgment must be affirmed.[3]

---

2. Lumbermens appealed, but on joint motion of the parties, the appeal was dismissed. *Lumbermens Mutual Casualty Company v. Thompson*, No. 9072 (Tex.Civ.App.—Amarillo, May 14, 1979).

3. While the absence from this record of any objections to the court's charge gives rise to speculation that the parties agreed to a shorthand submission of disputed fact issues, we are not disposed to so hold on this partial record.

Nevertheless, there is the procedural predicate for the consideration of Thompson's contention that USAA is liable to her as a matter of law, and it will be entertained. Thompson bases her contention on the theory that she is an insured person under, and thereby entitled to the benefits of, the uninsured motorist coverage of USAA's policy. She was, she initially argues, an insured by the requirements of the similar statutes of Texas [4] and Virginia,[5] because the policy provided coverage to Chris A. Johansen in driving her car and she is a person legally entitled to recover damages from the uninsured Espinosa. Next, she argues that she was an insured because her automobile was, within the endorsement's definition, a non-owned automobile being operated by a relative of the named insured, thereby making her automobile an insured motor vehicle.[6]

■ In making her arguments, Thompson cites and quotes from Article 5.06–1 of the Texas Insurance Code, which dictates

the uninsured motorist coverage required in a policy of automobile liability insurance delivered in Texas; yet, the coverage she seeks to invoke was designed to comply with the statute of Virginia, the state in which USAA's policy was delivered. She advances no cogent reason why the coverage provided in the endorsement should not be measured by the laws of Virginia; indeed, she represents that there are no distinctions between the uninsured motorist coverage statutes of the two states. In this connection, it is appropriate to note that uninsured motorist coverage in Virginia is provided by statutory compulsion, *Nationwide Mut. Ins. Co. v. Harleysville Mut. Cas. Co.*, 203 Va. 600, 125 S.E.2d 840, 841 (1962), and, so long as the coverage provided meets the requirements of the statute, we have no authority to extend it by judicial interpretation.

■ The flaw in Thompson's argument is that it ignores the clear contractual provisions of the endorsement without attempt-

4. Tex.Ins.Code Ann. art. 5.06–1 (Vernon Supp. 1963–1978). The statute reads, in part: "(1) No automobile liability insurance . . . covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto . . . for the protection of *persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, or property damage resulting therefrom. *The coverages required under this Article shall not be applicable where any insured named in the policy shall reject the coverage* . . . (emphasis added)." The statute does not contain a definition of the word "insured."

5. Va.Code, § 38.1–381, 1960 Cum.Supp.Code, § 38.1–381(b) provides, in part: "Nor shall any such policy or contract be so issued or delivered unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle . . . ."
    Code, § 38.1–381(c) defines the term "insured" in these words: "[T]he named insured and, while residents of the same household, the spouse of any such named insured, and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the

consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above . . . ."

6. Included within Thompson's argument is an expression that USAA's payment to her of $50 —tendered, so the record reveals, as "representing the difference in the $150.00 collision deductible under your collision coverage and the collision deductible of $100.00 under the physical damage coverage afforded our insured, E. H. Johansen"—should be treated as an admission against interest that Thompson's automobile was an insured automobile under the policy and that, because the admission is an element of estoppel, USAA should be estopped to deny her car was an insured vehicle. These two matters were unsuccessfully urged to the trial court; and, if the trial court's rejection of them was erroneous, the burden was upon Thompson to bring forward a record sufficient to show the court committed reversible error. *Coleman v. Pacific Employers Insurance Company*, 484 S.W.2d 449, 453 (Tex.Civ.App.—Tyler 1972, writ ref'd n. r. e.). Without the record before the trial court, we are unwilling to second-guess the court's evaluation of the force of the payment, particularly under the claim that it relates to only one of the several elements which are necessary to constitute estoppel.

ing to demonstrate definitively that its coverage is violative of the statutory mandate. To qualify to receive the protection and benefits of the uninsured motorist coverage provided by USAA, Thompson had to qualify as an insured under either one of the two classes of insureds created by the statute. *See Cunningham v. Insurance Company of North America*, 213 Va. 72, 189 S.E.2d 832, 834–35 (1972).

The first class of insureds is composed of the named insured and, while household residents, the spouse and relatives of either. *Insurance Company of North America v. Perry*, 204 Va. 833, 134 S.E.2d 418, 420 (1964). Thompson was not the policy's named insured, nor his spouse or the relative of either who resided in the named insured's household. She, therefore, did not qualify as an insured under the first class of insureds. *Nationwide Mut. Ins. Co. v. Harleysville Mut. Cas. Co., supra*, 125 S.E.2d at 843.

The second class of insureds is composed of those "who use" with the consent of the named insured the vehicle(s) to which the policy applies and those who are guests in such vehicle(s). *Insurance Company of North America v. Perry, supra*, 134 S.E.2d at 420. At the time of the collision, Thompson was occupying her own automobile. It was not one of the vehicles registered in Virginia with respect to which USAA's policy applies—*i. e.,* a motor vehicle designated in and insured under the policy. 11 Am. Jur.Trials, *Uninsured Motorist Claims* § 10 (1966). It was not one being used as a substitute for one of the vehicles described in the policy. And it was not one being operated by the policy named insured or his spouse. Thompson's automobile, therefore, was not an insured vehicle under the policy and, so, she did not qualify as an insured under the second class of insureds.

With some realization that she does not qualify as an insured defined in the endorsement, Thompson advances two other rationalizations why she is entitled to coverage. First, she submits that in Part IV of the basic liability insurance policy, the definition of an insured—*i. e.,* "the named insured and any relative"—has a broader meaning than the definition in the endorsement and, thus, the Part IV definition of an insured automobile—*i. e.,* "a non-owned automobile while being operated by the *named* insured (emphasis added)"—"means a non-owned automobile while being operated by the named insured *and any relative* (emphasis added)." The fault with this approach is that it requires a rewriting of the provision to substitute another (Chris A. Johansen) for the named insured (Eivind H. Johansen). It has been decided in Virginia that the court cannot substitute for the named insured by rewriting a policy to make a new contract for the parties in order to stretch the coverage. *Insurance Company of North America v. Perry, supra*, 134 S.E.2d at 420. The same legal principle appertains in Texas. *See, e. g., Members Mutual Insurance Company v. Cutaia*, 476 S.W.2d 278, 281 (Tex.1972).

Second, Thompson generalizes that to interpret the definitions and interrelated provisions of the policy to deny her coverage as an insured would be an invalid exclusion under the statutes of Texas and Virginia. In this regard, it is the rule in Virginia, applicable to policies issued or delivered there, that an uninsured motorist endorsement which contravenes the requirements of the statute is, to that extent, invalid. *Drewry v. State Farm Mutual Automobile Ins. Co.*, 204 Va. 231, 129 S.E.2d 681, 684 (1963). Texas adheres to a similar view. *See Francis v. Intern. Serv. Ins. Co.*, 546 S.W.2d 57, 60 (Tex.1976). Still, Thompson has cited no specific instance in which USAA's policy violates the applicable Virginia statute. Suffice it to state, then, that in considering an uninsured motorist endorsement definition of an insured similar to the one before us, the Supreme Court of Virginia found no conflict or inconsistency between it and the statute as to who is an insured. *Nationwide Mut. Ins. Co. v. Harleysville Mut. Cas. Co., supra*, 125 S.E.2d at 843. It is to be noted that the Virginia uninsured motorist statute "was not enacted to provide insurance coverage upon each and every uninsured vehicle to everyone."

*Drewry v. State Farm Mutual Automobile Ins. Co.,* supra, 129 S.E.2d at 685.

Accordingly, we conclude from this record that Dianne Thompson has not established as a matter of law that she was an insured entitled to the uninsured motorist coverage provided by USAA's policy issued to Eivind H. Johansen. What we have written moots any facet of the appeal which has not been directly addressed.

The take-nothing judgment is affirmed.